**NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DARIUS HEIMER GITTENS, | |
| Plaintiff, | Civil Action No. 23-17721 (MAS) (JTQ) |
| v. | **OPINION** |
| RYAN PEPPER, et al., | |
| Defendants. | |

**SHIPP, District Judge**

This matter comes before the Court on Plaintiff Darius Gittens's second amended complaint ("SAC").[1] (ECF No. 21.) As Plaintiff was previously granted *in forma pauperis* status, the Court is required to screen Plaintiff's amended complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and dismiss any claim which is frivolous, malicious, fails to state a claim for relief, or seeks relief from an immune defendant. For the reasons set forth below, Plaintiff's SAC shall proceed in part and be dismissed in part.

---

[1] Plaintiff named the following Defendants in the SAC: Ryan Pepper; Raimon Ng; Jonathan P. Gramp; James M. Stigliano; Timothy Maines; Rebecca L. Smith; Anna M. Miglio; Gregory S. Achinko; John B. Gardner; Donna L. Alexander; Shameca K. Lawson; Robert P. Devol; Mark R. Broadwater; Amanda J. Whilden; Thomas A. Togno; John F. Rollar; James C. Ross; Steven Sooy; Willie J. Bonds; Marcus O. Hicks; Bruce Davis; David W. Richards; Duane M. Grade; Edward Solytys; Dan Dibenedetti; John Blakslee; Melissa Matthews; Mervin Ganesh; John Falvey; Karin Burke; Nicole Sargenti; Jennifer Malinowski; Melinda S. Haley; Deborah Cope; Michelle Ricci; Suzanne Lawrence; Bettie Norris; Ebony Vaught; Amy Emrich, Cherice Hampton; Jessica McDuffie; Erica M. Stem; Jeffrey Crothers; Wayne Manstream; Hearing Officer Elizabeth DiBenedetto; Regina E. Easley; David Goffredi; Tiffany Fairweather; Kyle I. Brown; Daniel E. Kemble; Anthony Gadecki; Craig M. Sears; Chadd W. Lackey; and Garyn Nathan.

## I.    BACKGROUND

At the time of the events at issue in his SAC, Plaintiff was a convicted state prisoner.[2] (ECF No. 21 at 2.)  On October 2, 2019, Plaintiff was placed in Bayside State Prison.  (*Id.* at 15.) At the time of this transfer, Plaintiff had pre-existing medical conditions including substantial injuries to his shoulder, neck, and back.  This had been expressed to prison officials in Plaintiff's prior prison of incarceration, which had led to Plaintiff being restricted to a bottom bunk.  (*Id.*) Upon his transfer to Bayside, Plaintiff was initially provided a bottom bunk in the B Housing Unit, but found he was unable to sit up in his assigned bunk because of the low clearance height of the bed in his new cell.  (*Id.*)  Plaintiff's new cell also lacked a working light or a pillow sufficient for his needs.  (*Id.* at 15-16.)  Plaintiff thus made "oral complaints" to unspecified officers of B Unit and filed several grievances requesting transfer to a different cell.  (*Id.* at 16.)  Plaintiff also filed a number of other grievances.  (*Id.* at 16-17.)  Plaintiff was provided a new pillow and transferred out of Unit B within two weeks of his arrival.  He even thanked Bayside supervisors for this transfer on October 16, 2019.  (*Id.* at 17.)

Plaintiff alleges that on October 14, 2019, just prior to his transfer, Defendant Pepper threatened him with punishment should Plaintiff continue to file grievances.  (*Id.* at 18.)  Plaintiff was transferred to a new cell the following day.  This new cell permitted Plaintiff to sit and lay down "without pain" and had a light for reading.  (*Id.* at 18.)  Plaintiff, however, was still unhappy with his placement.  Plaintiff alleges that this unit, which was in a trailer, had rotting bathroom floors and did not receive a proper television signal, although the guards allegedly had their own functioning television which Plaintiff asserts was "stealing" signal.  (*Id.* at 19.)  Plaintiff also alleges that the trailer had air filters that prevented the flow of fresh outside air, and blocked fire

---

[2] Plaintiff has since been released from prison on parole.  (*See* ECF Nos. 24-25.)

2

exits, about which he complained to Defendants Roller, Miglio, Broadwater, Lawson, Devol, Whilden, Rollar, Ross, and Gramp. (*Id.* at 19.)

Plaintiff further alleges that Defendants Lawson and Miglio allegedly stole a piece of Plaintiff's mail on December 3, 2019. (*Id.*) Plaintiff attempted to file a letter to the prison's investigator, Defendant Gardner, but Plaintiff alleges this complaint was stolen by Defendant Devol. (*Id.* at 20.) The following day, Devol told Plaintiff that he was being transferred back to a dirty cell that did not meet his needs because of the complaints he had filed. (*Id.*) Later that day, Plaintiff appeared before the prison classification committee, and he was denied transfer to a lower security facility. (*Id.*) Plaintiff asserts that Defendant Miglio later told him this was the result of him filing complaints, which would not be tolerated by the prison's officers. (*Id.*) Plaintiff was thereafter placed in F Housing Unit. The cell had roaches, and no light, cable TV, or other comforts, which caused Plaintiff considerable pain and discomfort. (*Id.*)

Plaintiff, in response, contacted his ex-wife and a lawyer to complain about the situation. (*Id.* at 21.) They contacted prison staff, and investigators were instructed to interview Plaintiff. (*Id.*) On or about December 3, 2019, Defendant Alexander interviewed Plaintiff, examined his cell, and took recordings of the state of the cell including the presence of roaches. (*Id.* at 21.) Plaintiff also showed Defendant Alexander a diary containing his various complaints during his time at Bayside State Prison. (*Id.*) After the interview, Alexander allegedly told Plaintiff that nothing would come of it because she was friends with the officers involved and told Plaintiff he should put in for a transfer. (*Id.*) Plaintiff thereafter filed a letter to the prison ombudsman but alleges that the letter was stolen from the mailbox by unspecified persons. (*Id.* at 21.)

On December 17, 2019, Defendant Ng ordered Plaintiff out of his cell. (*Id.* at 22.) Defendants Ng and Pepper searched Plaintiff's cell and allegedly stole floppy discs, OPRA request files, and documents related to Plaintiff's litigation in two other civil cases. (*Id.*) Plaintiff alleges

3

this was part of a conspiracy against him between Ng and Pepper. (*Id.*) Plaintiff alleges they also stole and destroyed his diary containing his notes about the issues he faced in Bayside. (*Id.*) As a result of the search, Plaintiff was issued prison disciplinary charges relating to the alleged possession of contraband,[3] specifically internal prison procedural documents Plaintiff had obtained through OPRA requests which Plaintiff alleges he was permitted to possess. (*Id.* at 23.) Plaintiff was thereafter transferred to South Woods State Prison to a pre-hearing confinement unit. (*Id.*) During this transfer, Plaintiff was told by Defendant Sooy that he would not receive his diary back because "[D]efendant Pepper was going to keep it." (*Id.*) Sooy told Plaintiff that Pepper confiscated the book because it contained allegations against officers "for watching TV and smoking E-cigarettes and other stuff." (*Id.*)

Following his transfer to South Woods, Plaintiff underwent a disciplinary hearing before Defendant DiBenedetto. Plaintiff alleges that he was denied Due Process when he was not provided copies of documentary evidence, was denied a polygraph by Defendant Gramp, and was otherwise deprived of evidence by Ng and Pepper's destruction of his possessions. (*Id.* at 25-26.) Plaintiff also alleges that DiBenedetto hindered his defense by limiting his confrontation of Ng and Pepper. (*Id.* at 26.) Plaintiff was found guilty of several charges by Defendant DiBenedetto. He was sanctioned with the loss of sixty days of good time credits and received a number of other minor punishments. (*Id.* at 58.)

Plaintiff was then transferred to New Jersey State Prison. (*Id.* at 27.) Plaintiff alleges that, while in New Jersey State Prison, he was denied access to kosher meals in violation of his religious rights. (*Id.* at 28.) Plaintiff alleges that in January 2020, he was provided with five boxes of his

---

[3] Plaintiff also received a charge related to planning an escape because his diary apparently contained detailed information regarding the layout of several areas of the prison. (*Id.* at 28.) He was found guilty of this charge. (*Id.*)

possessions transferred from his prior prison assignments, but these boxes did not contain a number of papers, computer discs, and the like, which Plaintiff asserts were stolen or destroyed by Ng and Pepper. (*Id.* at 37.) Plaintiff claims, without adequate explanation, that this property was worth $1,395.

Plaintiff asserts that in April 2020, Defendant Kovacs confiscated OPRA records as contraband and provided him with a confiscation receipt. (*Id.* at 39.) Plaintiff filed complaints, but the records were not returned. (*Id.* at 40.)

In his final set of allegations, Plaintiff asserts that several Defendants, employed by the central office of the Department of Corrections, received complaints and letters from him grieving the conditions and circumstances he faced. (*Id.* at 29-30, 59.) Plaintiff asserts, however, that they did not adequately investigate his claims or otherwise become involved. (*Id.*) Several of those to whom he wrote told Plaintiff that his complaints were beyond their purview and directed him to contact other offices. (*Id.* at 38-39.)

## II.    LEGAL STANDARD

Because Plaintiff has been granted *in forma pauperis* status, the Court is required to screen his SAC pursuant to 28 U.S.C. § 1915(e)(2)(B). Pursuant to the statute, the Court must *sua sponte* dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *Id.* "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)).

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is required to accept as true all factual allegations in the complaint and draw all

reasonable inferences from those allegations in the light most favorable to the plaintiff, *see Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008), but need not accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A complaint need not contain "detailed factual allegations" to survive a motion to dismiss, but must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" and a complaint will not "suffice" if it provides only "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). A complaint that provides facts "merely consistent with" the defendant's liability "stops short of the line between possibility and plausibility" and will not survive review under Rule 12(b)(6). *Id.* (quoting *Twombly*, 555 U.S. at 557). While *pro se* pleadings are to be liberally construed in conducting such an analysis, *pro se* litigants must still "allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

III.    **DISCUSSION**[4]

In his initial claims, Plaintiff asserts that he was subjected to unconstitutional conditions of confinement upon his arrival at Bayside State Prison because his bed was not of an adequate height for him to sit up, he did not have light, and initially did not have an adequate pillow. According to Plaintiff's own allegations, however, he was in this cell for only two weeks, and upon filing several complaints was quickly moved to a new cell that was tall enough and had lights. Plaintiff also admits that he was provided with a pillow. Although the Eighth Amendment forbids cruel and unusual punishment and therefore prohibits prison officials from subjecting inmates to inhumane conditions, it "does not mandate comfortable prisons." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To plead an Eighth Amendment claim based on unduly punitive conditions of confinement, a plaintiff must plead facts indicating that the defendants subjected him to "objectively, sufficiently serious" conditions which resulted in the "denial of the minimal civilized measure of life's necessities," and that the prison officials' actions indicate that they were "deliberate[ly] indifferen[t] to [the plaintiff's] health or safety" in imposing those conditions. *Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 441 (3d Cir. 2020) (quoting *Farmer*, 511 U.S. at 834).

The facts Plaintiff pleads regarding his initial cell in Bayside are insufficient to support a conditions of confinement claim. The alleged facts reflect that Plaintiff's stay in the cell was for

---

[4] The Court dismissed Plaintiff's first amended complaint without prejudice. (ECF Nos. 19-20.) In so doing, the Court granted leave for Plaintiff to file a SAC within thirty days. (*See* ECF No. 20.) Statutes of limitations, including the two-year statute of limitations applicable to federal civil rights claims in New Jersey, are generally not tolled by the filing of a complaint that is subsequently dismissed without prejudice. *Brennan v. Kulick*, 407 F.3d 603, 606 (3d Cir. 2005). An exception to this rule applies, however, where the court dismisses but grants leave to amend within a certain time, in which case the new complaint will receive the benefit of the dismissed complaint's date of filing so long as it is filed within the time set by the order of the court. *Id.* at 606-08. Plaintiff's SAC is dated within the thirty-day period but was not postmarked until after the thirty-day period. (ECF No. 21-2 at 1.) Plaintiff provides in a separate filing a document purporting to indicate that his SAC was handed over for filing but was delayed by a broken mail machine. (*See* ECF No. 22-1 at 5.) The Court accepts Plaintiff's assertions as true for the purposes

a short duration as Plaintiff was only in this cell for two weeks. In addition, the prison provided Plaintiff with the requested pillow and Plaintiff received a cell transfer when he brought these issues to the attention of the appropriate individuals. Further, Defendants were likely unaware of Plaintiff's chief issue with the cell—the lack of sufficient height for a person with Plaintiff's particular medical history to sit up comfortably. Here, Plaintiff asserts that Defendants should have known of his history solely because of medical records Plaintiff believes that Defendants should have reviewed. Plaintiff was also provided with the bottom bunk ordered by medical officials. Accordingly, the alleged facts do not permit an inference of deliberate indifference, and the deprivation Plaintiff alleges is not sufficient to support an Eighth Amendment claim.

Plaintiff next raises a similar conditions of confinement claim related to the cell to which he was then transferred. Plaintiff admits that this cell had adequate lighting and head clearance for him to sit up properly given his medical issues. Plaintiff takes issue with this placement, however, because he alleges that: (1) fresh air flow was limited; (2) fire exits were blocked; (3) there were roaches; (4) his TV had poor reception; and (5) the bathroom floors were rotten and damaged. Plaintiff remained in this cell for approximately two months. A number of the conditions about which Plaintiff complains are not constitutional in nature. Nevertheless, because one could plausibly infer from Plaintiff's allegations regarding the rotten floors, roaches, and blocked exits that Plaintiff was exposed to sufficiently serious conditions of which Defendants Roller, Miglio, Broadwater, Lawson, Devol, Whilden, Rollar, Ross, Alexander and Gramp were aware, Plaintiff's conditions of confinement claim regarding this placement shall proceed against

---

of this Opinion and thus deems the SAC timely filed. Defendants are free, however, to present on summary judgment any contrary evidence they may have should they wish to argue that Plaintiff's SAC was not timely filed.

8

these Defendants only.  To the extent Plaintiff intended to raise this claim against other Defendants, he has not pled adequate facts to connect them to the claim.

Plaintiff also alleges that, in January 2020, he was placed in disciplinary housing for nearly two weeks without full access to his materials or law libraries during the pendency of disciplinary proceedings.  (ECF No. 1 at 21.)  Placement in punitive housing for a brief period, including solitary confinement, however, is insufficient to state a claim for relief.  *See, e.g.*, *Sandin v. Conner*, 515 U.S. 472, 485-86 (1995).  Plaintiff's claim based on this placement must therefore be dismissed without prejudice for failure to state a plausible claim for relief.

In addition, throughout his SAC, Plaintiff asserts that many actions taken against him were retaliatory in nature.  "In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action."  *Thomas v. Independence Township*, 463 F.3d 285, 296 (3d Cir. 2006).  As to Defendants Ng, Sooy, Lawson, Miglio and Pepper, Plaintiff has pled adequate facts to permit a plausible inference that they retaliated against him in response to complaints and grievances he made, and his claim against these Defendants shall proceed at this time.  As to the numerous remaining Defendants, however, Plaintiff has not pled sufficient facts to permit a plausible inference of retaliatory conduct or that any such conduct was motivated by protected activities.  Instead, Plaintiff relies on mere conclusory allegations of

retaliation.  Thus, any claims for retaliation Plaintiff has against the remaining Defendants are dismissed without prejudice at this time.[5]

Plaintiff next asserts that Defendants Ng, Pepper, Lawson, Miglio, Kovacs, and Sears improperly destroyed, confiscated, or stole various pieces of his property in a number of separate incidents.

> [W]here a state actor deprives an individual of property without authorization, either intentionally or negligently, that deprivation does not result in a violation of the Fourteenth Amendment so long as a meaningful post deprivation remedy for the loss is available. *See Hudson v. Palmer*, [468 U.S. 517, 530-36] (1984); *Parratt v. Taylor*, [451 U.S. 527, 543-44] (1981), *overruled in part on other grounds, Daniels v. Williams*, [474 U.S. 327] (1986).

*Love v. N.J. Dep't of Corr.*, No. 14-5629, 2015 WL 2226015, at *5 (D.N.J. May 12, 2015).  The State of New Jersey provides prisoners with viable post-deprivation remedies in the form of both the New Jersey Tort Claims Act and the state prison inmate grievance system.  *Id.*; *see also Pressley v. Huber*, 562 F. App'x 67, 70 (3d Cir. 2014).  Although Plaintiff asserts in his SAC that his grievances and property claims with the prisons were ignored or did not bear fruit, he also alleges that he filed a civil tort claim in state court.  Plaintiff alleges this action was dismissed on entire controversy grounds because he had this matter pending, but also specifically states that he was told by the state court that he could return if his claims bore no fruit in this matter.  Meaningful post deprivation process thus was and remains available to Plaintiff through the Tort Claims Act, and Plaintiff therefore fails to state a plausible claim for relief under the Due Process Clause.

Plaintiff also asserts that a number of Defendants were involved in the denial of his Due Process rights in relation to his prison disciplinary proceedings that resulted in his being found

---

[5] Plaintiff mentions in his SAC the allegation, which Judge Kugler previously severed into a separate action, that his transfer to Bayside State Prison was retaliatory for earlier protected conduct.  As that allegation was severed from this action into its own proceeding, it is not properly a part of this case.  To the extent Plaintiff wished to pursue that claim, he was required to do so through the case he filed in Docket No. 21-17348.

guilty of allegedly false disciplinary charges and sanctioned with a loss of sixty days of good time credits. "[T]he act of filing false disciplinary charges does not itself violate a prisoner's constitutional rights." *Poole v. Mercer Cnty. Corr. Ctr.*, No. 11-3730, 2012 WL 694689, at *2 (D.N.J. Feb. 29, 2012); *Mimms v. U.N.I.C.O.R.*, 386 F. App'x 32, 36 (3d Cir. 2010). It is instead only when the prisoner is denied Due Process in a disciplinary hearing stemming from such charges that his rights are violated. *Id.* That Plaintiff alleges Defendants, including Ng and Pepper, filed false charges against him thus serves as no basis for a civil rights claim.

Plaintiff's assertion that numerous Defendants, including Ng, Pepper, DiBenedetto, Gramp, and Falvey denied him Due Process by depriving him of evidence, restricting his defense, and denying him other procedures, however, could provide the basis of an actionable claim. Any such claim, however, would be barred because the result of Plaintiff's conviction on the disciplinary charges was the imposition of a loss of sixty days of good conduct time, and Plaintiff alleges facts indicating that this guilty finding was never overturned. The Supreme Court has long held that a federal civil rights action "will not lie when a state prisoner challenges the fact or duration of his confinement," nor may such a prisoner use a civil rights claim to seek either his "immediate release" or a "shortening" of his term of confinement through a claim for damages. *Wilkinson v. Dotson*, 544 U.S. 74, 79 (2005); *Heck v. Humphries*, 512 U.S. 477, 486-87 (1994); *Preiser v. Rodriguez*, 411 U.S. 475, 482, 489 (1973). Thus, "a . . . prisoner's [civil rights] action is barred (absent prior invalidation [of his conviction or disciplinary proceeding]) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal [disciplinary] proceedings) – *if* success in that action would necessarily demonstrate the invalidity of the confinement or its duration." *Wilkinson*, 544 U.S. at 81-82. Thus, before a prisoner may raise a challenge to a prison disciplinary proceeding which resulted in the loss of good time credits and thus affected the validity of the overall length of his

11

sentence, a prisoner must "achieve the favorable termination of his available state or federal habeas remedies" and have the offending decision reversed, expunged, or declared invalid by a state or federal tribunal authorized to make that determination. *Herrera v. Agents of Pa. Bd. of Prob. & Parole*, 132 F.4th 248, 255-56, 255 n.6 (3d Cir. 2025). So long as such a claim would necessarily invalidate either the prisoner's state judgment of conviction or a state court disciplinary charge which affected the fact or length of his detention, this bar on pursuing a federal civil rights suit remains even where the prisoner has since been released, and habeas relief is no longer available. *See, e.g.*, *Williams v. Consovoy*, 453 F.3d 173, 177-78 (3d Cir. 2006); *Gilles v. Davis*, 427 F.3d 197, 210 (3d Cir. 2005); *Woodward v. Ahearn*, No. 22-3812, 2023 WL 397828, at *4 (D.N.J. Jan. 25, 2023). Because Plaintiff alleges that the result of the alleged Due Process violations was the loss of good conduct credits, and he does not allege that this sanction was ever overturned, rescinded, or otherwise undone, his claims are barred notwithstanding his release on parole. Plaintiff's Due Process claims related to his disciplinary proceedings must therefore be dismissed without prejudice as a result.

Plaintiff also asserts, in a number of places, that his rights were violated when a number of individuals either did not respond or inadequately responded to his grievances filed either by letter, the inmate kiosk, or through paper grievance complaints. Prisoners, however, have no federal right to an inmate grievance system, nor do they have a right to any particular response to any grievance they may file. *See, e.g.*, *Roberts v. Aviles*, No. 10-5916, 2012 WL 603790, at *1 n.4 (D.N.J. Feb. 16, 2012); *Wilson v. Horn*, 971 F. Supp. 943, 947 (E.D. Pa.), *aff'd*, 142 F.3d 430 (3d Cir. 1998); *see also Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) ("the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state"). That Plaintiff's grievances and letters of complaint did not produce the desired effect is

12

no basis for a civil rights claim. Plaintiff's assertions to that effect, therefore, fail to state a claim upon which relief may be granted and are dismissed as such.

In addition to his § 1983 claims, Plaintiff attempts to assert civil rights conspiracy claims under §§ 1985 and 1986. Such claims, however, require a conspiracy to violate a plaintiff's civil rights based on race or protected class based discriminatory animus. *See, e.g., Kokinda v. Pa. Dep't of Corr.*, 779 F. App'x 944, 949-50 (3d Cir. 2019). Even putting aside that Plaintiff asserts only a conclusory allegation of conspiracy, because Plaintiff has not alleged that he was discriminated against on account of his membership in a protected class, he fails to state a claim under either statute. *Id.*

Plaintiff also alleges that his confinement in cramped cells with inadequate headroom qualifies as a violation of the Americans with Disabilities Act ("ADA") in light of his medical history. To state a claim under the ADA, a plaintiff "must allege that he is a qualified individual with a disability, who was precluded from participating in a program, service, or activity, or otherwise was subject to discrimination, by reason of his disability." *Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 288-89 (3d Cir. 2019). To make out a claim for damages under the ADA,[6] a plaintiff must also show intentional discrimination under a deliberate indifference standard on the basis of his disability. *Id.* at 289. Although Plaintiff has alleged prior conditions which the Court assumes would meet the requirements of the ADA, he has not pled adequate facts to support an inference of discriminatory animus or deliberate indifference to his medical conditions. As noted above, when Plaintiff complained of the cramped quarters, he was transferred within two weeks to a new

---

[6] As Plaintiff has been paroled, he no longer has a viable claim for injunctive relief.

cell that met his needs for sitting up in his cell.[7] The facts pled thus fail to state a plausible claim for relief for damages under the ADA and are again dismissed as such.

Plaintiff next asserts that at least some Defendants committed a civil RICO violation in allegedly stealing documents and books from him during his prison stay and committing vaguely alleged frauds and cable TV theft. A civil RICO claim, however, requires allegations indicating that the defendants performed conduct as an enterprise which harmed a plaintiff's business or property through a pattern of racketeering activity including at least two overt acts of racketeering. *Parness v. Christie*, No. 15-3505, 2015 WL 4997430, at *6-8 (D.N.J. Aug. 19, 2015). Theft allegations "do not constitute predicate acts." *See Marangos v. Swett*, 341 F. App'x 752, 756-57 (3d Cir. 2009). Because Plaintiff has provided sufficient allegations only regarding the theft and has failed to plead the alleged frauds with particularity, he has not adequately pled the two overt acts required to support a civil RICO claim. Plaintiff's RICO claim is dismissed without prejudice as such.

In his final federal claim, Plaintiff attempts to assert a claim under RLUIPA for having been denied a kosher diet for three months during his time at New Jersey State Prison, in which he is no longer housed. Indeed, Plaintiff is no longer in the custody of the NJDOC at all. RLUIPA, which is aimed at ensuring prisoners have the right to pursue their sincerely held religious beliefs, does not generally permit monetary damages. *See, e.g., Banks v. Sec'y Pa. Dep't of Corr.*, 601 F. App'x 101, 103-04 (3d Cir. 2015); *Sharp v. Johnson*, 669 F.3d 144, 154 (3d Cir. 2012). Claims under RLUIPA instead permit prisoners to seek injunctive relief to put an end to violative prison

---

[7] Plaintiff further fails to plead facts to suggest that the litany of Defendants he names were or should have been aware of the extent of his medical condition beyond the bottom bunk pass medical provided him, which appears to have been honored throughout his various transfers. That Plaintiff filed grievances, reviewed and answered by persons not clearly specified, is not sufficient to support an inference of sufficient discriminatory animus.

14

conditions; such claims, however, become moot upon a transfer to a new prison where those conditions are not ongoing. *Banks*, 601 F. App'x at 103-04. As Plaintiff's RLUIPA claim targets an already completed event – the denial of kosher meals at NJSP – and as that denial is not ongoing and Plaintiff has in any event been released, Plaintiff's RLUIPA claim is moot and must be dismissed as such. *Id.*

Plaintiff also seeks to bring a number of state law claims. To the extent Plaintiff sought to raise claims under the New Jersey Civil Rights Act, those claims are essentially identical to their federal analogues under § 1983 and thus are discussed with their matching federal claim above. *See, e.g.*, *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443-44 (D.N.J. 2011) (noting that § 1983 and NJCRA claims are in nearly all cases effectively identical and subject to the same elements, defenses, and limitations and are thus coterminous). To the extent this Court proceeds a claim under § 1983, this Court also proceeds Plaintiff's underlying NJCRA claim. To the extent this Court dismisses a claim under § 1983, the matching NJCRA claim is dismissed.

Plaintiff also asserts a number of state law theft-related torts against Defendants Lawson, Miglio, Sears, Ng, Pepper, and Kovacs. This Court will permit those claims to proceed at this time.

Finally, at the end of his claims Plaintiff provides a one sentence conclusory allegation that he wishes to present claims under the New Jersey Law Against Discrimination and Law Against Disability Discrimination. Plaintiff, however, does not detail the nature of these claims or the Defendants to whom they apply. Plaintiff also fails to provide any further specifics of the claims he seeks to raise under these state statutes. Because Plaintiff has failed to plead a short and plain statement permitting the inference of an entitlement to relief under these statutes, he fails to state a plausible claim for relief in these claims. These claims are therefore dismissed without prejudice at this time.

## IV.    CONCLUSION

For the reasons expressed above, Plaintiff's SAC (ECF No. 21) shall **PROCEED** in part and be **DISMISSED** in part.  An order consistent with this Opinion will be entered.

s/ Michael A. Shipp

**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

**Dated:**  February 18, 2026

16